**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | |
| **v.** | : | **Criminal Case No. MJM-25-0264** |
| | : | |
| **STEPHEN NICHOLAS WESTCOTT,** | : | |
| **Defendant.** | : | |

## MOTION TO SUPPRESS TANGIBLE AND DERIVATIVE EVIDENCE

Stephen Nicholas Westcott, by and through his attorney, respectfully moves this Honorable Court pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure to suppress the fruits of search and seizure warrants signed by Judge Ketterman of the District Court for Talbot County for the person of Mr. Westcott and 12982 Augustine Herman Highway, Kennedyville, Maryland. The information in the affidavits in support of the warrants was too stale to establish probable cause to search Mr. Westcott or 12982 Augustine Herman Highway. The Fourth Circuit has repeatedly recognized that "time is a crucial element of probable cause." *See, e.g.*, *United States v. McCall*, 740 F.2d 1331, 1335 (4th Cir. 1984). In Mr. Westcott's case, law enforcement waited nearly **two and a half years** after Discord, a social media and messaging application, first observed the alleged distribution of child pornography before obtaining the warrants at issue in this case.

No matter how the Court analyzes the pertinent time period, the affidavits in support of the search and seizure warrants make clear that police were dilatory in obtaining the warrants. The affidavits establish that Discord first reported the alleged distribution of child pornography to law enforcement **almost 29 months before** the application for the search warrants. Discord's last report to law enforcement occurred **almost 25 months before** the application for the search

warrants. Law enforcement completed nearly all of its investigation **almost 20 months before** applying for the search warrants. And any other potentially material information gathered after that occurred no later than **16 months before** the application for the search warrants. The passage of time rendered the information in the affidavits so stale that they no longer provided probable cause to search Mr. Westcott or 12982 Augustine Herman Highway. Thus, this Court must suppress all fruits of the search and seizure warrants.

## FACTUAL AND PROCEDURAL BACKGROUND

A federal grand jury returned an indictment on August 28, 2025, charging Mr. Westcott with four counts of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a); three counts of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2); and six counts of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Counts One through Four and Seven through Thirteen charge creation, distribution, and possession of images of child pornography found on devices seized by the Maryland State Police executing search and seizure warrants on Mr. Westcott and 12982 Augustine Herman Highway, Kennedyville, Maryland, on November 21, 2024. Only Counts Five and Six charge distribution of images that may have been obtained through search warrants to Discord and Snapchat issued prior to November 21, 2024. This Motion seeks to suppress the evidence giving rise to Counts One through Four and Seven through Thirteen, which is all fruits of the search and seizure warrants executed on Mr. Westcott and 12982 Augustine Herman Highway. Without that evidence, however, the images and chats obtained previously from Discord and Snapchat would not have been sufficient to sustain the charges in Counts Five and Six. Accordingly, the staleness at issue in this Motion infects the entirety of the Government's case.

**A. Cybertips and Subsequent Investigation**

The affidavits in support of the search warrants for Mr. Westcott and 12982 Augustine Herman Highway relied primarily on 15 cybertips Maryland State Trooper Sarver received on March 28, 2023, from the National Center for Missing and Exploited Children ("NCMEC"). *See* Exhibit 1 (Nov. 20, 2024, Search and Seizure Warrants) (filed separately under seal). Each tip was provided to NCMEC by Discord:

| Cybertip # | Date of image capture | # of files | Discord Username | User Email Address | User IP Address |
|---|---|---|---|---|---|
| 128186283 | 5/19/22 | 9 | Boys R Better#6021 | N/A | 172.243.134.108 |
| 128223150 | 5/19/22 | 2 | Boys R Better#6021 | N/A | 172.243.134.108 |
| 128441923 | 5/28/22 | 2 | Deleted User 7892b657#7565 | N/A | 172.243.134.108 |
| 128714546 | 5/31/22 | 4 | Deleted User 7892b657#7565 | N/A | 172.243.134.108 |
| 133931982 | 9/5/22 | 1 | Boys R Better#4357 | newsteveydiscord@mail.com | 172.243.178.146 |
| 133932062 | 9/5/22 | 1 | Boys R Better#4357 | newsteveydiscord@mail.com | 172.243.178.146 |
| 133945459 | 9/8/22 | 1 | Boys R Better#4357 | newsteveydiscord@mail.com | 172.243.178.146 |
| 133945479 | 9/8/22 | 1 | Boys R Better#4357 | newsteveydiscord@mail.com | 172.243.178.146 |
| 133945505 | 9/8/22 | 1 | Boys R Better#4357 | newsteveydiscord@mail.com | 172.243.178.146 |
| 133945513 | 9/8/22 | 1 | Boys R Better#4357 | newsteveydiscord@mail.com | 172.243.178.146 |
| 135221234 | 9/19/22 | 1 | Boys R Better#6600 | Boysrbetter6@mail.com | 172.243.178.146 |
| 135224626 | 9/20/22 | 1 | Boys R Better#858 | N/A | 172.243.178.146 |
| 135287897 | 9/21/22 | 1 | Boys R Better#3409 | Boysrbetter7@mail.com | 172.243.178.146 |
| 135287899 | 9/21/22 | 1 | Boys R Better#3409 | Boysrbetter7@mail.com | 172.243.178.146 |
| 136185904 | 10/8/22 | 1 | Boys R Better#2007 | Boysrbetter9@mail.com | 172.243.178.146 |
| 137713768 | 10/26/22 | 1 | >3 Boys#5551 | Boysrbetter12@email.com | 172.243.178.146 |

The tips span a five-month period and were reported to NCMEC on different dates, although the latest date Discord reported one of these tips to NCMEC was October 26, 2022, according to discovery. *See* USAO-000802. NCMEC received the tips from Discord on the following dates:

| Cybertip # | Date of image capture | Date NCMEC received tip from Discord | Bates Pages |
|---|---|---|---|
| 128186283 | 5/19/22 | 7/1/22 | USAO-000863 |
| 128223150 | 5/19/22 | 7/2/22 | USAO-000838 |
| 128441923 | 5/28/22 | 7/6/22 | USAO-000810 |
| 128714546 | 5/31/22 | 7/11/22 | USAO-000854 |
| 133931982 | 9/5/22 | 9/8/22 | USAO-000846 |
| 133932062 | 9/5/22 | 9/8/22 | USAO-000786 |
| 133945459 | 9/8/22 | 9/8/22 | USAO-000818 |
| 133945479 | 9/8/22 | 9/8/22 | USAO-000794 |
| 133945505 | 9/8/22 | 9/8/22 | USAO-000874 |
| 133945513 | 9/8/22 | 9/8/22 | USAO-000826 |
| 135221234 | 9/19/22 | | missing |
| 135224626 | 9/20/22 | 9/20/22 | USAO-000882 |
| 135287897 | 9/21/22 | 9/21/22 | USAO-000889 |
| 135287899 | 9/21/22 | 9/21/22 | USAO-000897 |
| 136185904 | 10/8/22 | 10/8/22 | USAO-000910 |
| 137713768 | 10/26/22 | 10/26/22 | USAO-000802 |

The first NCMEC tip in this series involved images captured by Discord **almost 30 months before** Trooper Sarver applied for the search warrants for Mr. Westcott and 12982 Augustine Herman Highway. Discord began reporting the images to NCMEC, a law enforcement agency, on July 1, 2022—**almost 29 months before** Trooper Sarver sought the search warrants for Mr. Westcott and 12982 Augustine Herman Highway. The last report to NCMEC occurred on October 26, 2022, **almost 25 months before** Trooper Sarver applied for the search warrants.

On March 28, 2023, Trooper Sarver wrote a report summarizing these tips, providing a description of each image, and indicating the subscriber information for the IP addresses, which was Claude Westcott. *See* Exhibit 2 (Mar. 28, 2023, Sarver Report) (filed separately under seal).

Notably, the Incident Report identifies the incident location as 12982 Augustine Herman Highway, Kennedyville, Maryland 21645, and lists the Suspect as "Westcott, Stephen Nicholas." Both the Report Date and Occurrence Date are listed as "03/28/2023." There is no indication that the report was written on a later date, but it makes reference to previous investigative steps to determine the subscriber information for the two different IP addresses: "Subpoena sent by Cumberland County Prosecutor's Office to ViaSat for IP address subscriber information" and "A subpoena was sent to ViaSat for subscriber information by Northumberland County." Exhibit 2 at 4 & 11. The report also references what appear to be contemporaneous investigative steps: "I searched the IP address in MaxMind and the ISP is ViaSat." Exhibit 2 at 7. Thus, it appears that, as of March 28, 2023, Trooper Sarver had nearly all the information that he included in the affidavits he swore out **nearly 20 months later** to obtain the search warrants for Mr. Westcott and 12982 Augustine Herman Highway.

**B. Summary of the November 20, 2024, Search and Seizure Warrants for Mr. Westcott's Person and 12982 Augustine Herman Highway**

Judge Ketterman of the District Court for Talbot County signed the search and seizure warrants for Mr. Westcott and 12982 Augustine Herman Highway on November 20, 2024. The warrants, as noted above, relied largely on the 15 NCMEC tips identifying the alleged distribution of child pornography. The sections describing probable cause for the warrants replicated portions of a previous search and seizure warrant Trooper Sarver had authored.

Specifically, Trooper Sarver previously obtained a search and seizure warrant on March 30, 2023, for Discord accounts allegedly associated with the above 15 cybertips. *See* Exhibit 3 (Mar. 30, 2023, Search and Seizure Warrant) (filed separately under seal). Paragraphs 1 through 7 of the affidavit sworn out by Trooper Sarver for the warrant to Discord are virtually identical to Paragraphs 19 through 26 of the affidavit in support of the warrant to search Mr. Westcott's person

and Paragraphs 22 through 29 of the affidavit in support of the warrant to search 12982 Augustine Herman Highway. *Compare* Exhibit 1 at 12–14 & 32–33, *with* Exhibit 3 at 5–7. Trooper Sarver received the requested records from Discord on April 13, 2023. Paragraphs 27 through 31 of the warrant to search Mr. Westcott's person and Paragraphs 30 through 34 of the warrant to search 12982 Augustine Herman Highway are based entirely on information received from Discord on April 13, 2023. Exhibit 1 at 14–15 & 33–35.

Paragraphs 32 through 35 of the warrant for Mr. Westcott's person and Paragraphs 35 through 38 of the warrant for 12982 Augustine Herman Highway explain that the address listed for Claude Westcott in the subscriber information received from the cybertips was not a real address. Exhibit 1 at 15 & 35. A search of MVA records showed that Claude Westcott had an address of 12892 Augustine Highway. Exhibit 1 at 15 & 35. A search of the Maryland Assessment and Taxation Database showed that 12892 Augustine Herman Highway was owned by Claude Dorsey Westcott and Stephen Nicholas Westcott. Exhibit 1 at 15 & 35. The MVA database listed 12892 Augustine Highway as the address for Stephen Westcott and indicated that he was approximately 33 or 34 years old. Exhibit 1 at 15 & 35.

Paragraphs 36 through 37 of the warrant for Mr. Westcott's person and Paragraphs 39 through 42 of the warrant for 12982 Augustine Herman Highway discussed records received on July 11, 2023, from Snapchat for the account boysr.better. Exhibit 1 at 15 & 35–36.

Paragraphs 43 through 47—the last five paragraphs of the warrant for 12982 Augustine Herman Highway—explained that Discord and Snapchat are "social media/messaging application[s];" summarized Mr. Westcott's alleged use of those applications prior to April 13, 2023, and July 11, 2023, respectively; and stated that surveillance placed Mr. Westcott "[o]n several occasions" at 12982 Augustine Herman Highway and placed a Toyota Takoma, registered

to Mr. Westcott, at that residence in November 2024. Exhibit 1 at 36. Paragraph 38—the final paragraph of the warrant for Mr. Westcott's person—stated:

> Your Affiant knows through his training, knowledge, and experience that THE TARGET SUBJECT will likely be carrying electronic/media storage devices on his person. "While individuals regularly leave their vehicles, they compulsively carry cell phones with them all the time. A cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters…" (*Carpenter v. United States, 138 S.Ct. 2206, 2218 (2018))*. This finding is consistent with the specific training and experience of Your Affiant, who knows that individuals commonly carry smartphones on their persons.

Exhibit 1 at 16.

Accordingly, the probable cause set forth on November 20, 2024, to obtain the warrants that yielded nearly all the evidence in this case relied almost entirely on information available to Trooper Sarver no later than July 11, 2023, or **more than 16 months** before the application for the warrants. The only information that may have been obtained after that date was from physical surveillance in November 2024 placing Mr. Westcott at 12982 Augustine Herman Highway.

## ARGUMENT

The basis for probable cause to search Mr. Westcott and 12982 Augustine Herman Highway existed at least 16 months before Trooper Sarver applied for the search warrants. Indeed, the underlying NCMEC tips described conduct that had occurred about 25 to 30 months prior to the application for the search warrants, and the conduct was reported to law enforcement starting July 1, 2022—almost 29 months before Trooper Sarver sought the warrants. Thus, regardless of how the Court analyzes the pertinent time period, the information in the affidavits was so stale that it no longer provided probable cause to search Mr. Westcott or 12982 Augustine Herman Highway, and the affidavits offered no evidence of recent or ongoing criminal activity to "freshen" the stale probable cause.

### A. The information offered to establish probable cause to search Mr. Westcott and 12982 Augustine Herman Highway was stale.

The Fourth Circuit has declared that "there is no support for the contention that once probable cause exists to search for child pornography, it remains valid *ad infinitum*." *United States v. Doyle*, 650 F.3d 460, 475 (4th Cir. 2011). While the probable cause determination depends on the context—and, thus, probable cause may potentially exist for longer periods of time in the context of some types of investigations—"there is no question that time is a crucial element of probable cause." *United States v. Richardson*, 607 F.3d 357, 370–71 (4th Cir. 2010) (quoting *McCall*, 740 F.2d at 1335); *see also United States v. Prideaux-Wentz*, 543 F.3d 954, 958 (7th Cir. 2008) (holding that probable cause in the context of a child pornography investigation became stale with the passage of years; "there must be some limitation on [the] principle" that probable cause may last for longer periods in the context of child pornography investigations). Thus, several courts have found that probable cause underlying a search warrant in the child pornography context was stale after a lengthy delay in law enforcement applying for a search warrant. *See, e.g.*, *United States v. Raymonda*, 780 F.3d 105, 116–17 (2d Cir. 2015) (nine-month delay); *United States v. Doan*, 245 F. App'x 550, 553–55 (7th Cir. Aug. 6, 2007) (seventeen-month delay); *United States v. Coon*, No. 10-CR-110A, 2011 WL 1871165, at *2–4 (W.D.N.Y. May 16, 2011) (nearly one-year delay); *United States v. Greathouse*, 297 F. Supp. 2d 1264, 1273 (D. Or. 2003) (thirteen-month delay).

In *Doyle*, the Fourth Circuit held that a search warrant was not supported by probable cause where the accompanying affidavit failed to establish that the information alleged was not stale. 650 F.3d at 475. There, the search warrant affidavit alleged that "[o]ne victims [sic] disclosed to an Uncle that Doyle had shown the victim pictures of nude children." *Id.* at 464. After hearing testimony, a federal magistrate judge concluded that there was insufficient evidence to support

probable cause that the alleged images would be found in Doyle's house because the affidavit failed to establish "when the pictures were shown to [the child], where they were shown to the child, or whether the pictures actually met the statutory definition of child pornography." *Id.* at 466. On appeal, the Fourth Circuit agreed with the magistrate judge that, even assuming Doyle did possess child pornography, "it was unreasonable to believe that probable cause was demonstrated to search Doyle's home given the complete absence of any indication as to when the pictures were possessed." *Id.* at 474. Recognizing that "a delay—even a substantial delay—between distribution and the issuance of a search warrant" does not necessarily mean the information is stale, the court countered that probable cause cannot remain valid forever. *Id.* at 474–75 (quoting *Richardson*, 607 F.3d at 370). Thus, the Fourth Circuit concluded that "even if the affidavit established probable cause, it was completely devoid of indicia that the probable cause was not stale." *Id.* at 475; *see also Prideaux-Wentz*, 543 F.3d at 958–59 (concluding that the warrant lacked probable cause where it did not indicate when images of child pornography were uploaded to the internet, and the images could have been uploaded as many as two to four years before the warrant was obtained).

Courts have found delays ranging from nine months to seventeen months long enough to render probable cause stale. In *Coon*, "almost an entire year [] elapsed between the time the child pornography was first discovered by [law enforcement] and the time that the warrant was ultimately executed []." 2011 WL 1871165, at *2. The court, acknowledging that "numerous courts have recognized that digital files remain on computers for extensive periods of time, even if they have been deleted," nevertheless found probable cause lacking. *Id.* at *4. The court explained that "the ability to recover deleted computer files does not, without more, support

probable cause to search a residence;" "[t]here also must be probable cause to believe that the computer will be located at the residence at the time of the search." *Id.* at *3. The court continued:

> Ordinarily, where the time between the downloading of the pornography and the search of the residence is relatively brief, it is easy to infer that the computer is still at the location where the pornography was downloaded. The shorter the time between those two events, the stronger the inference. Conversely, as more time passes between the initial download and the search of the residence, the more attenuated probable cause becomes.

*Id.* In Mr. Coon's case, "almost an entire year" had elapsed between the time law enforcement initially discovered the child pornography and the time of the search warrant, and "[d]uring that period, no additional illicit downloads occurred." *Id.* The only "new" information that law enforcement had obtained during that time was information confirming "that the person living at the residence was likely the same person who downloaded the child pornography." *Id.* "[N]othing about that information," however, "confirmed to the agents that [any] computer would still be located at the defendant's address." *Id.* Noting that the Government had not presented evidence that Mr. Coon "hoarded" child pornography (he did not have a "pre-paid membership," did not subscribe to "any illicit internet publications," and the search warrant application referenced one download), the court determined that law enforcement lacked probable cause to search Mr. Coon's residence. *Id.* at *4.

Similarly, in *Greathouse*, the court considered the Government's claim that "child pornography collectors routinely maintain their materials for long periods of time" in determining whether a thirteen-month delay in obtaining a warrant rendered the probable cause stale. 297 F. Supp. 2d at 1272. The court—calling the claim regarding "child pornography collectors" an "assumption"—found that this claim was "not based upon any empirical data or studies," but rather appeared "to be based upon a generalized sense developed through informal conversations" among police. *Id.* Considering the totality of the circumstances, including "the absence of ongoing,

continuous criminal activity"—law enforcement did not undertake any investigation to determine if further criminal activity occurred during the intervening months—the court concluded that "the thirteen month delay in this case [was] simply too long." *Id.* at 1272–73. The court continued that, "[i]f a line must be drawn in internet child pornography cases . . . the line is one year absent evidence of ongoing or continuous criminal activity." *Id.* at 1273. In Mr. Greathouse's case, although it was "possible" that law enforcement could discover incriminating evidence when executing the search warrant, the court stated that it could not "find that there still existed a 'fair probability' that child pornography would be found." *Id.*; *see also United States v. Boozer*, 511 F. Supp. 3d 1128, 1136–38 (D. Or. 2021) (concluding that an approximately thirteen-month delay rendered probable cause stale).

In *Raymonda*, the Second Circuit found that an individual accessing a webpage containing images of child pornography did not create a fair probability that child pornography would be found on his computer nine months later. 780 F.3d at 117. There, it "was not enough simply to show that the suspect had at some point accessed thumbnails of child pornography." *Id.* The affidavit needed to show that the individual "accessed them in circumstances sufficiently deliberate or willful to suggest that he was an intentional 'collector' of child pornography, likely to hoard those images—or acquire new ones—long after any automatic traces of that initial incident had cleared." *Id.* Because no such "propensity-raising circumstances" were present in the record, the Court held that the police could not rely on the nine-month-old evidence to support probable cause. *Id.*

Likewise, in *Doan*, the Seventh Circuit determined that a seventeen-month delay between when Mr. Doan paid for subscriptions to child pornography websites and the issuance of the warrant—where the warrant lacked detailed information "related either to [Mr. Doan] or to the

agent's experience of discovering eighteen-month-old child pornography"—was "insufficient to establish probable cause." 245 F. App'x at 554. In addition to explaining that Mr. Doan had subscribed to two different child pornography websites, the affidavit in support of the search warrant provided all the personal information associated with the subscriptions, including Mr. Doan's name, street address, credit card number, and email address; matched the information from the subscriptions with information obtained from multiple sources, including physical surveillance; explained that only child pornography was available on the websites Mr. Doan subscribed to; and, notably, included the affiant's experience in career "discover[ing] sexually explicit child pornography that has been aged more than eighteen months." *Id.* at 552. Nevertheless, the court concluded that the affiant's prior experience did not cure the staleness from the age of information in the affidavit. *Id.* at 554. The court explained that "the older the information is regarding child pornography, the more necessary it is to include more detail concerning that information and concerning the person who is the subject of the investigation." *Id.* In Mr. Doan's case, where the affidavit did not specify such details as the duration of the website subscriptions, the last time Mr. Doan had accessed the websites, and whether he had a computer in his home, the seventeen-month-old information was not enough to establish probable cause. *Id.*

Turning to Mr. Westcott's case, no matter how the Court determines the pertinent time period before law enforcement obtained the search warrants, the delay at issue in the instant case is as long as—or longer than—the delay at issue in any of the above cases where the court found that probable cause was stale. The alleged distribution of child pornography—which precipitated the 15 NCMEC tips and formed the cornerstone of the search warrants alleging probable cause to believe that evidence of child pornography would be found on Mr. Westcott's person and at 12982

Augustine Herman Highway—occurred about 25 to 30 months prior to the application for the warrants. *See United States v. Covington*, No. 5:18-CR-7-FL, 2019 WL 8012370, at *4 (E.D.N.C. Aug. 27, 2019) ("The relevant time period for determining probable cause is measured from the date of the underlying criminal activity, not when the information was provided to law enforcement.") (citing *United States v. Anderson*, 851 F.2d 727, 729–30 (4th Cir. 1988)). This is about three times longer than the nine-month delay at issue in *Raymonda* and about a year longer than the seventeen-month delay at issue in *Doan*.

Even if the Court focuses on the time period when the alleged distribution was reported to law enforcement, the delay remains unacceptably long. The affidavits in support of the search warrants for Mr. Westcott and 12982 Augustine Herman Highway establish that Discord reported the images to NCMEC, a law enforcement agency, beginning July 1, 2022—almost 29 months before the warrants. *See United States v. Ackerman*, 831 F.3d 1292, 1297 (10th Cir. 2016) ("Recent Supreme Court decisions fortify our conviction that NCMEC qualifies as a governmental entity."); *see also United States v. Cameron*, 699 F.3d 621, 645 (1st Cir. 2012) (stating that "NCMEC effectively acted as an agent of law enforcement, because it received a government grant to accept reports of child pornography and forward them along to law enforcement"). Indeed, even focusing on the latest report from Discord to NCMEC—October 26, 2022—that would still be almost 25 months before the warrants. This remains about 8 to 16 months longer than any of the time periods at issue in the above-cited cases.

The Government cannot claim that law enforcement's delay was justified by the need to continue its investigation. Reports authored by Trooper Sarver make clear that he had completed the vast majority of the investigative steps outlined in the affidavit as of March 28, 2023—nearly 20 months before he applied for the warrants. To be sure, law enforcement had not yet obtained

the Discord and Snapchat search warrants as of that date. But even examining the delay between when the police received the returns from the Discord and Snapchat warrants and when they sought a warrant for Mr. Westcott's person and 12982 Augustine Herman Highway, the delay remains sixteen months long. This is just one month shorter than the delay at issue in *Doan* and between about four to seven months longer than the delay at issue in the other above-cited cases.

Given the length of the delay in law enforcement seeking the warrants, "the more necessary it [was] to include more detail" to cure the staleness of the information alleging that Mr. Westcott had distributed child pornography. *Doan*, 245 F. App'x at 554. As explained below, however, nothing in the affidavits cured the staleness from the age of the information.

**B. Nothing in the warrant affidavits "freshened" the stale probable cause to search Mr. Westcott or 12982 Augustine Herman Highway.**

Although courts have found in some instances that a substantial delay in law enforcement obtaining a warrant did not render probable cause stale, in those cases the courts found some evidence that tended to "freshen" or update the older evidence. For example, in *United States v. Lapsins*, 570 F.3d 758 (6th Cir. 2009), the Sixth Circuit determined that nine-month-old probable cause was freshened by information submitted to NCMEC that showed Mr. Lapsins had uploaded 132 images of child pornography one month before the warrant application. *Id.* at 762–63, 767. The Sixth Circuit explained that that the additional information "was reliable enough to contribute to a finding of probable cause," and "it remedied any potential staleness defect." *Id.* at 767. Similarly, in *United States v. Newsom*, 402 F.3d 780 (7th Cir. 2005), the Seventh Circuit determined that year-old information was not stale where police also had reliable information that Mr. Newsom still possessed images of child pornography a year later. *Id.* at 783. In that case, an individual who lived with Mr. Newsom found images of child pornography about a year before she went to the police. *Id.* at 781–82. Then, about a year later, the individual discovered videos

of her daughter on Mr. Newsom's computer. *Id.* at 782. The individual filed a police report, and law enforcement subsequently obtained and executed a search warrant. *Id.* The Seventh Circuit relied on the recent evidence in determining that Mr. Newsom "probably still had the year-old images or something similar on his computer." *Id.* at 783; *see also United States v. Harvey*, 2 F.3d 1318, 1322–23 (3d Cir. 1993) (concluding that more than one-year-old information that Mr. Harvey possessed child pornography was not stale where the affidavit also referenced evidence that he had possessed child pornography just two months earlier).

By contrast, in Mr. Westcott's case, the affidavits in support of the search warrants did not freshen or supplement the stale probable cause with any evidence of recent or ongoing criminal activity. The NCMEC tips related to discrete dates over a five-month period between May and October 2022. Referencing additional information received from Discord, the affidavits provided other dates in September and October 2022 when child pornography was distributed using a Discord account. *See* Exhibit 1 at 14–15 & 33–35. Although the affidavits alleged that records received from Snap, Inc. in June 2023 suggested that a Snapchat account was "also being used to send and receive child pornography," the affidavits did not state when the images were actually being sent and received. *See* Exhibit 1 at 15 & 35. The only specific date referenced in regard to the Snapchat account was May 15, 2023, on which date it was alleged that Mr. Westcott sent a picture of himself. Exhibit 1 at 35. Thus, taken as a whole, the affidavits offered no specific evidence of criminal conduct beyond October 2022—more than **two years before** law enforcement applied for the search warrants for Mr. Westcott and 12982 Augustine Herman Highway.

Although the affidavits indicated that law enforcement had reviewed "over 100 images and videos of child pornography," *see* Exhibit 1 at 14 & 36, the Government cannot credibly claim that

this reaches the level of "collecting" or "hoarding" to justify such a serious delay in applying for the search warrants. *Cf. Raymonda*, 780 F.3d at 117 (noting that the Government had not shown that Mr. Raymond was an "intentional 'collector' of child pornography, likely to hoard those images—or acquire new ones—long after any automatic traces of that initial incident had cleared"); *Coon*, 2011 WL 1871165, at *4 (noting that the Government had not presented evidence that Mr. Coon "hoarded" child pornography). If law enforcement believed that Mr. Westcott was amassing a "collection" or "hoarding" child pornography, it stands to reason that they would not have waited 16 months after receiving the last of the search warrant returns from Snapchat before applying for the search warrants for Mr. Westcott and 12982 Augustine Herman Highway. In the face of such a belief, law enforcement would have acted expeditiously to obtain and execute the warrants. The fact that law enforcement instead allowed a significant amount of time to pass before acting emphasizes that this was not an ongoing offense, but rather discrete actions occurring over a relatively short period of time.

Lacking information to establish a recent or ongoing criminal offense, the affidavits included boilerplate language that individuals engaged in the collection of child pornography "typically keep their collection for long periods of time." Exhibit 1 at 12 & 31. But *Greathouse* and *Doan* establish that these kinds of claims cannot revive stale probable cause. Just as in *Greathouse*, this claim is an "assumption." 297 F. Supp. 2d at 1272. It is "not based upon any empirical data or studies," nor is it enough to cure stale information in "the absence of ongoing, continuous criminal activity." *Id.* at 1272–73. Indeed, Trooper Sarver's statement regarding the "typical[]" actions of individuals who commit child pornography offenses is even less reliable than the agent's statement in *Doan*. In *Doan*, the agent indicated that he had previously discovered child pornography more than eighteen months after an offense was committed. *See* 245 F. App'x

at 552 ("In my professional career I have discovered sexually explicit child pornography that has been aged more than eighteen months."). Here, by contrast, Trooper Sarver did not offer any personal experiences of discovering child pornography after a 16-month delay, let alone after a delay of 25 to 30 months.

Instead, Trooper Sarver cited three cases—none of which appears to have involved him and all of which are factually distinct from the instant case—where courts found a delay did not render probable cause stale. *See* Exhibit 1 at 12 & 31 (citing cases). Specifically, in *United States v. Hay*, 231 F.3d 630 (9th Cir. 2000), the court considered a six-month delay—10 to 24 months shorter than the delay at issue in Mr. Westcott's case. *Id.* at 636. In *United States v. Lacy*, 119 F.3d 742 (9th Cir. 1997), the court considered a ten-month delay—6 to 20 months shorter than the delay at issue in Mr. Westcott's case. *Id.* at 745. And in *Behrel v. State*, 151 Md. App. 64 (2003), although the delay at issue was years longer than the delay at issue here, the facts were entirely different than this case. There, the court determined that 16-year-old probable cause was not stale where the item to be searched and seized was a footlocker, which "functioned as a piece of furniture and a repository for pornographic materials," "never lost its utility," was not perishable, and was "readily transportable." *Behrel*, 151 Md. App. at 96. None of these citations is sufficient to establish probable cause in Mr. Westcott's case.

Nor is the assertion that law enforcement can "recover deleted digital files (i.e.[,] image/video files) months or years after they are deleted from the computer system" enough to cure the staleness of the information in the affidavits. *See* Exhibit 1 at 18 & 38. Even assuming that law enforcement can recover deleted files after 16 to 30 months—which is not at all guaranteed—law enforcement would first need to find the computer on which the files are stored. As the court explained in *Coon*, "the ability to recover deleted computer files does not, without

more, support probable cause to search a residence;" "[t]here also must be probable cause to believe that the computer will be located at the residence at the time of the search." 2011 WL 1871165, at *3. In Mr. Westcott's case, the affidavits did not include any evidence to conclude that computers or other devices would be located after a delay of 16 to 30 months. As in *Coon*, there was no evidence presented that Mr. Westcott had received or distributed child pornography for about two years prior to the issuance of the warrants. Although law enforcement took investigative steps in November 2024 to determine whether Mr. Westcott resided at 12982 Augustine Herman Highway as of that date, *see* Exhibit 1 at 36, "nothing about that information confirmed to the agents that [any] computer would still be located at the [] address." *Coon*, 2011 WL 1871165, at *3.

In sum, the affidavits fail to establish anything more than a possibility that law enforcement could discover incriminating evidence when executing the search warrants. A mere possibility, however, is not enough to establish probable cause. *See Greathouse*, 297 F. Supp. 2d at 1273.

## CONCLUSION

The Court should suppress all fruits of the search and seizure warrants issued on November 20, 2024.

Respectfully submitted,

JAMES WYDA
FEDERAL PUBLIC DEFENDER

/s/

Shari Silver Derrow
Assistant Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
Phone: (410) 962-3962
Fax: (410) 962-3976
Email: shari_derrow@fd.org